**Lyle Arthur POAGE and Eva May Poage**

v.

**CITY OF RAPID CITY, a Municipal Corporation.**

**No. CIV 76–5075.**

United States District Court,
D. South Dakota.

April 5, 1977.

George A. Bangs, Rapid City, S. D., for plaintiff.

Horace R. Jackson and Greg A. Eiesland, Rapid City, S. D., for defendant.

Donald D. Foreman, pro se.

## MEMORANDUM OPINION

BOGUE, District Judge.

### I.

Plaintiffs allege substantially as follows: that at all times material for this case they were owners and in lawful possession of real property described as Lots Five (5) and Six (6), in Block Fifty-two (52) of the Original Townsite of the City of Rapid City, Pennington County, South Dakota, together with certain improvements thereon, consisting of a commercial building and certain personal property in and about such building; that on June 9, 1972, a devastating flood was experienced in the Rapid City area and that the building on Plaintiffs' property was damaged by that flood; and that on June 12 and 13, 1972, the Common Council of the City of Rapid City and the Board of County Commissioners of Pennington County adopted a joint resolution which stated as follows:

"WHEREAS certain areas within the city of Rapid City, Pennington County, South Dakota have been declared disaster areas; and,

WHEREAS as a result of the devastation there exists a major problem so far as debris in the stricken area; and,

WHEREAS, unless this debris is immediately removed from the areas involved there will be a possibility of drastic consequences to the public health, peace and safety; and,

WHEREAS, the political subdivisions and the governing officers thereof are charged by law with protecting the public health, peace and safety; and,

WHEREAS, the United States Corps of Engineers is now prepared to assist the civil defense agencies in effecting debris removal and in ground clearance as a governmental function;

NOW THEREFORE BE IT RESOLVED BY THE PENNINGTON COUNTY COMMISSIONERS AND THE COMMON COUNCIL OF THE CITY OF RAPID CITY, SOUTH DAKOTA, that the United States Corps of Engineers is hereby authorized and empowered to effect debris removal and clearance in those areas of this disaster area, such as in its judgment and that of the Department of Public Works, constitute a critical danger to life, health and the emergency function of civil government; and,

IT IS FURTHER RESOLVED that such actions shall be taken and considered as a governmental function pursuant to SDCL 33–15–38 and liability shall not accrue thereunder to any person or agency acting under this resolution except in case of willful misconduct, gross negligence, or bad faith.

Dated this 12th day of June, 1972."

It is further alleged that from June 10, 1972, until August 15, 1972, Plaintiffs were active in cleaning up mud and debris which had accumulated in their building as a result of the flood; that on August 15, 1972, persons acting under the authority of the City of Rapid City destroyed the building with a bulldozer and hauled away the remnants of the building, together with certain personal property that was situated in and around the building, to an unknown place of disposal. Plaintiffs contend that they had no notice whatsoever that the city intended to destroy the building and that no opportunity has ever been given to these plaintiffs for a hearing with respect thereto.

Finally, Plaintiffs allege that in subsequent condemnation proceedings the City of Rapid City acquired title to the underlying real property mentioned, *supra*, but that in the calculation of just compensation, no consideration was given to the value of the building or personal property situated in and around the building. It is also alleged that the Defendant City of Rapid City asserts a right to take and destroy property without notice, hearing or compensation pursuant to South Dakota Civil Defense Law, which is contained in S.D.C.L. 33–15, and that South Dakota asserts sovereign

immunity from this suit under S.D.C.L. 33–15–38.

## II.

Plaintiffs initially alleged that federal subject matter jurisdiction existed under 42 U.S.C. § 1983 and 28 U.S.C. § 1331. As the case has progressed, it now appears that they are invoking the federal court's jurisdiction only under 28 U.S.C. § 1331, *i. e.* they seek to frame a federal question. We think they have succeeded; Plaintiffs have squarely presented an issue which may demand construction of the due process clause of the fourteenth amendment. Due to the nature of the issues raised, Plaintiffs' reliance upon *Foster v. City of Detroit*, 405 F.2d 138 (6th Cir. 1968) is well placed. This Court does have subject matter jurisdiction.

## III.

A more troublesome question concerns the principle of comity raised by Defendants; specifically, whether or not the Court should abstain from exercising its jurisdiction in this instance. According to Wright's analysis,[1] there are four distinct lines of cases whose holdings have contributed to the growth of the "abstention doctrine;" each line of cases reveals one principle upon which courts predicate the propriety of abstention. We have examined these lines of cases and conclude that under the circumstances of this case, for the reasons hereinafter discussed, abstention is proper at this time.

## IV.

The first line of abstention cases derives from the root case, *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), wherein the Supreme Court ordered a district court to abstain from deciding a case until the parties had an opportunity to obtain from a Texas state court a decision on the state issues involved. The rationale was that adjudication of state issues by the state court might render adjudication of a federal constitutional question unnecessary. Thus "Pullman type abstention" has come to mean that a federal district court should abstain from deciding a federal constitutional question when the controversy may be resolved by state tribunals applying state law. Abstention based upon *Pullman* is *not* appropriate when the relevant state law is settled or where it is plain that a challenged state statute is unconstitutional no matter how it may be construed by a state's highest court. C. Wright, *supra*, n. 1 at § 52.

## V.

The primary question with which we are concerned at this time appears to be: whether or not there is a reasonable possibility that proceedings in the state court system could render adjudication of a federal constitutional question unnecessary. To answer that question, more detailed discussion of Plaintiffs' suit and surrounding circumstances is necessary.

The main thing Plaintiffs are complaining about is the lack of any hearing wherein a determination can be made as to whether or not their property (which was bulldozed and hauled away) was at the time of its destruction a danger to the safety and welfare of the public. There appears to be no dispute about the proposition that if the property was truly such a danger, then destruction pursuant to the police power was lawful; moreover, it is undisputed that a lawful exercise of the police power resulting in destruction of private property requires no compensation. Destruction pursuant to the police power is not a taking. Conversely, everyone seems to agree that a taking necessitates a compensation.

It appears, therefore, that the dispute centers upon the drawing of the line between a police action which requires no compensation and a taking which requires compensation. More specifically, the dispute raises the questions: (1) who ultimate-

---

1. C. Wright, *Law of Federal Courts*, § 52 (2nd ed. 1970). *See also* 1 Barron and Holtzoff, *Federal Practice and Procedure*, (Wright Ed.) § 64 and 1A, *Moore's Federal Practice*, ¶ 0.201–¶ 0.204 (1959).

ly decides whether an act of destruction is a police action or a taking? (2) with what degree of specificity must findings be made relative to the condition of a piece of property prior to its destruction and removal?

Plaintiffs' position is that South Dakota law has given the crucial decision making (fact-finding) process over to bulldozer operators and lesser administrative personnel. They point to the resolution, *supra*, which leaves the critical determination of what ought be removed as debris to the "judgment" of the United States Corps of Engineers and the Department of Public Works. They further argue that S.D.C.L. § 33–15–38,[2] pursuant to which the resolution was made, converts all acts taken pursuant to that chapter (except in cases of willful misconduct, gross negligence or bad faith) into governmental functions to which sovereign immunity is extended. Neither the statute nor the resolution provides for a hearing so that an impartial arbiter will have to review the judgments made by the Corps of Engineers or the Department of Public Works or the employees of either. The result of this statute, the resolution, and their joint application, say Plaintiffs, is to deny any meaningful hearing for review of the question of whether a given piece of property constituted a critical danger to life or health at the time of its destruction.

Defendants, particularly Intervenor State of South Dakota,[3] counter Plaintiffs' assertions with the argument that a meaningful judicial review is available in state court.

According to their analysis, a hearing need not be provided for with specificity in the statute that grants immunity for actions undertaken as governmental functions; they insist that aggrieved citizens have an adequate remedy because they can bring a trespass action in state court. In a trespass action, argue the Defendants, a determination *will* be made as to whether the destruction of any given piece of property was necessary for the peoples' safety and health; hence, everything Plaintiffs seek is available in state court and ought to be sought there.

Plaintiffs readily respond that other persons similarly situated have gone off to state court[4] and have been denied any meaningful hearing. It is their claim that the trial judge in the state system makes only a general finding that the clean up activities were civil defense functions and then proceeds to apply the sovereign immunity statute. In this way, according to their argument, the precise question, *i. e.* whether a plaintiff's property was dangerous to health or safety, is circumvented and a plaintiff ends up being deprived of property without due process of law.

■ Thus, Plaintiffs contend that the statute, S.D.C.L. § 33–15–38, is unconstitutional on its face, *a fortiori* it has been unconstitutionally applied, and they claim they will not risk waiving their right to a hearing in federal court by commencing what they believe is a futile effort to seek relief in the state system.[5] They want a

2. S.D.C.L. § 33–15–38 states in relevant part: "All functions under this chapter and all other activities relating to civil defense are hereby declared to be governmental functions. Neither the state nor any political subdivision thereof, nor other agencies, nor, except in cases of willful misconduct, gross negligence, or bad faith, any civil defense worker complying with or reasonably attempting to comply with this chapter, or any order, rule or regulation promulgated pursuant to the provisions of this chapter, or pursuant to any ordinance relating to blackout or other precautionary measures enacted by any political subdivision of this state, shall be liable for the death of or injury to persons, or damage to property, as a result of such activity."

3. It appeared to this Court that the constitutionality of a statute of the state affecting the public interest was drawn into question; hence, this fact was certified to the state attorney general, pursuant to P.L. 94–381, 90 Stat. 1119, and South Dakota intervened.

4. A copy of a state judge's memorandum opinion in *City of Rapid City v. Boland, et al.*, has been made a part of the record.

5. In this Court's opinion, Plaintiffs certainly will not waive any rights to a hearing in federal court (assuming they file in state court) if they reserve resolution of federal constitutional issues for a federal forum. *See England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

partial summary judgment at this time declaring, *inter alia*, that they have a right to a hearing relative to the alleged dangerous condition of their property on the day of its destruction. Assuming this judgment would be in their favor, they then want a hearing on the merits in federal court.

### VI.

■ This Court must decide how this set of circumstances can be related to the *Pullman* rationale; specifically, whether the federal system can benefit from our abstention at this time or whether abstention will only lead to unnecessary delay and possibly confusion. The Eighth Circuit Court of Appeals has stated:

> The abstention doctrine, under which a district court may decline to exercise its jurisdiction is an extraordinary and narrow exception to the court's duty to adjudicate a controversy properly before it which may be invoked only in exceptional circumstances.[6]

We are required to examine the circumstances with great care.

Having undertaken a careful examination of the circumstances, we note first of all that Plaintiffs are attacking a South Dakota statute which purportedly denies them a hearing. (For the text of the statute, see note 2, *supra*.) We note further that the statute begins by stating:

> All functions under this chapter and all other activities relating to civil defense are hereby declared to be governmental functions. S.D.C.L. § 33–15–38.

Now, if one were to assume that every act *labeled* a civil defense function was irrebuttably presumed to *be* a civil defense function (*ergo* immunity), Plaintiffs' theory would be unassailable as far as effect of the statute goes. But, it is *not* clear that this statute was intended to or necessarily does prohibit judicial inquiry into the question of whether a particular act of destruction was in reality rightfully undertaken pursuant to the civil defense law.

In our view, it is quite possible that the statute *could* be construed to grant immunity only in those cases where destruction of property was a lawful police action; *i. e.* where the property was a danger to health, safety, etc. Quite possibly, the South Dakota Supreme Court might find that a hearing is necessary to make that determination. We hesitate to pass upon the effect of this statute until South Dakota's highest court has had opportunity to construe it.

Secondly, we note at this time that Plaintiffs' protests about the lack of a meaningful hearing in a state court when a trespass action, or an inverse condemnation action, is brought are based (at least in part) upon their reading of the *Boland* case, note 4, *supra*. It has been indicated that the *Boland* case illustrates the dilemma which results upon application of S.D.C.L. § 33–15–38; *i. e.* without specific findings relative to one litigant's property, all action purportedly taken pursuant to the civil defense law is swept into the category of lawful police action taken in an emergency situation. At that point sovereign immunity is invoked; hence, due process is arguably short-circuited.

The *Boland* case is now on appeal to the South Dakota Supreme Court. The high court's ruling and opinion in that case will, no doubt, be extremely enlightening. They might demand that more specific findings be made by the trial court. They might decide that S.D.C.L. § 33–15–38 was wrongly applied. Whatever they decide, it could be very beneficial for this Court to have their views and rulings on a case that appears to raise the same *legal* questions as the case now under consideration.

Thirdly, we take note of the fact that the South Dakota constitution has a due process clause (Article VI, § 2). We think there would be considerable merit in waiting to see whether the South Dakota court will analyze this problem in light of the state's due process clause. In at least two recent cases, the United States Supreme Court has

---

6. *Augustin v. Mughal*, 521 F.2d 1215 (8 Cir. 1975), *citing County of Allegheny v. Frank Ma-* *shuda Co.*, 360 U.S. 185, 188–189, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959).

approved of abstention when it appeared that an interpretation of a state constitution might obviate the need for adjudication of a federal constitutional question.[7]

We must candidly concede that Plaintiffs are *not* raising state constitutional issues in the present suit, and we have no way of knowing for certain that these will be raised in the *Boland* appeal. All things considered, however, we think it is reasonably possible that the resolution of the legal questions posed in the *Boland* appeal could render this Court's decision on a federal constitutional question unnecessary.

With that possibility in mind, and because it is clear that the South Dakota Supreme Court will hear the *Boland* case long before we can get *Poage* on for trial in federal court, we think present circumstances bring this case within the *Pullman* abstention rationale. By abstaining at this time we may be able to avoid premature adjudication of a federal constitutional question.

### VII.

So far we have examined this case only in light of the *Pullman* rationale for abstention and have not specifically considered other principles which could justify abstention. We think detailed, separate consideration would be of little value at this time. The abstention doctrines tend to overlap; moreover, some learned commentators tend to consider all abstention doctrines as variations of *the* abstention doctrine formulated in *Pullman.*

■ We will again say summarily, however, that the state law which is crucial to a resolution of this case is not entirely clear. Unsettled questions of state law are best left to the states; this has been recognized in itself as a valid ground for abstention. C. Wright, *supra*, § 52. Coupled with the *Pullman* rationale, this seems to make abstention particularly desirable.

### VIII.

■ It remains for us to consider precisely what this Court should do with this case at this point in time. Dismissal would seem improper under the circumstances. It would seem more proper to retain jurisdiction and await developments in South Dakota law. When the *Boland* case is decided by the South Dakota Supreme Court, this Court could then take a fresh look at Plaintiffs' claim in light of an authoritative pronouncement on the effect of S.D.C.L. § 33–15–38.

### IX.

At this time, therefore, this Court is not inclined to grant a partial summary judgment on the seven points enumerated in Plaintiffs' motion.[8] We will state, however, that Plaintiffs' reliance upon *North American Cold Storage Co. v. Chicago*, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) seems well placed. This Court's initial consideration of this matter has led us to the conclusion that the principles of law which emerge from nuisance cases, wherein the line between police power and condemnation is drawn, are probably the principles which will need to be applied to cases such as this in the final analysis.

### X.

One final area that is problematic needs to be touched upon. Although it may seem peripheral to the summary judgment motion now before this Court, the question may become sharply disputed if the first hurdles in this case are crossed by Plaintiffs; they vigorously argue that once the questions raised in the motion for partial summary judgment are settled (assuming *arguendo* in their favor), then this federal court *must* hear the case on its merits. They cite *Foster v. City of Detroit, supra*, to support the proposition that any other course of action would be an abuse of discretion. It is this Court's opinion that if it

---

7. *Askew v. Hargrave*, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971); *Reetz v. Bozanich*, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed. 68 (1970).

8. *See* Plaintiffs' Motion for Partial Summary Judgment filed January 14, 1977.

becomes necessary to make a construction of the fourteenth amendment due process clause, then that construction ought to be the end of this Court's involvement. Hearings, if any, should be before state tribunals.

We certainly can see the constitutional question lurking in the background in this case and all similar cases likely to arise due to the flood disaster in Rapid City, South Dakota. But, as the Sixth Circuit Court of Appeals recognized in *Muskegon Theaters, Inc. v. City of Muskegon*, 507 F.2d 199 (6 Cir. 1974):

> [T]here is the possibility of a federal question in every taking by eminent domain under state authority. *Citing* Nichols, Law of Eminent Domain, §4.13(2) (1973).

Yet, every taking by the power of eminent domain does not create a federal case. Likewise, we do not think that every case wherein it is alleged that there may be a taking, as opposed to an exercise of police power, necessarily belongs in federal court.

This Court, therefore, states explicitly at this time: (1) we will abstain from adjudication of any questions in this case, but retain jurisdiction pending further developments in a similar case now before the South Dakota Supreme Court; (2) if it becomes necessary to rule on a federal constitutional question, it is this Court's intention to make the required ruling but to abstain from hearing the case on its merits; for if a hearing is required, it ought to be had before a state tribunal.