Gary MARSHALL, Plaintiff,

v.

The BOARD OF COUNTY COMMISSIONERS FOR JOHNSON COUNTY, WYOMING, to-wit: R. Tracy Rhodes, Neal Schuman, and Richard Tass in their official capacity,

and

R. Tracy Rhodes, individually and in his capacity as Chairman and member of the Board of County Commissioners for Johnson County, Wyoming, Neal Schuman, individually and in his capacity as a member of the Board of Directors for Johnson County, Wyoming, Jimmie C. Key, individually and as former Chairman of the Board of County Commissioners for Johnson County, and Kerry C. Money, individually and in his capacity as a member and Chairman of the Johnson County Planning Commission, Defendants.

No. 93–CV–1024–J.

United States District Court,
D. Wyoming.

Jan. 22, 1996.

Stuart S. Healy, Sheridan, WY, for Gary R. Marshall.

David Palmerlee, Sean P. Durrant, Omohundro & Palmerlee, Buffalo, WY, for R. Tracy Rhodes, Neal Schuman, Jimmie C. Key.

Rex O. Arney, Cynthia L. Harnett, Murane & Bostwick, Casper, WY, for Kerry C. Money.

Tom C. Toner, Yonkee & Toner, Sheridan, WY, John R. Perry, Goddard, Perry & Vogel, Buffalo, WY, for Johnson County Board of County Commissioners.

### ORDER ON DISPOSITIVE MOTIONS

ALAN B. JOHNSON, Chief Judge.

The following motions came on for hearing November 30, 1993: defendants' motions to dismiss for lack of jurisdiction, defendants' motion for summary judgment and defendants' motion to stay discovery. Appearing at the hearing for plaintiff was Stuart S. Healy of Sheridan, Wyoming; appearing for the individual defendants except Kerry C. Money was David Palmerlee of Buffalo, Wyoming; appearing for Kerry C. Money, individually, was Rex O. Arney of Casper, Wyoming; and appearing for the Johnson County Board of County Commissioners was Tom C. Toner of Sheridan, Wyoming. The Court, having considered the motions, the responses thereto, all materials filed in support of and in opposition to the motions, the arguments of counsel, and being fully advised in the premises, FINDS and ORDERS as follows:

### Background and Complaint

This is a Section 1983 [42 U.S.C. § 1983] case. In the complaint, plaintiff asserts violations of constitutional rights, including a violation of the "just compensation" taking clause, violations of procedural and due process and a denial of equal protection under the fourteenth amendment, and a denial of his civil rights by state officials acting under color of state law, all contrary to Section 1983.

Plaintiff owns approximately 111 acres of unimproved land in Johnson County west of Buffalo, Wyoming. On January 5, 1992, he submitted to the Johnson County Planning Commission an application for a permit to develop a residential subdivision on this land for middle to moderate income families. The land was to be developed in 25 separate lots ranging in size from 2.175 to 19.39 acres. Plaintiff claims that his subdivision proposal met the requirements for preliminary approval set forth in Wyoming Statute § 18–5–306. The plaintiff's proposed subdivision was to be developed without an incorporated public sewage disposal system, without a domestic water system, and without public maintenance of streets and roads within the system, as authorized by Wyo.Stat. § 18–5–306.

The proposal came before the planning commission for approval in February of 1992. Plaintiff claims that a number of wealthy and influential owners of large tracts between the proposed subdivision and the Big Horn Mountains opposed his proposed subdivision. Plaintiff alleges that these other property owners brought pressure upon the planning commission and the county commissioners to prohibit development of his proposed subdivision by imposing artificial requirements upon the plaintiff to increase the size of individual lots to not less than five acres and by requiring plaintiff to install at his expense sewer, water and road systems.

Plaintiff asserts that it is not practical to increase the size of individual lots or to meet

the improvement requirements described above, because of the configuration of the land and because the five acre requirement would reduce the number of potential homesites from 23 to as few as 7. Plaintiff argues that the Board of County Commissioners knew or had reason to know that the five acre minimum lot size and improvement requirements would undermine the economic feasibility of the proposed subdivision project and would prevent development, destroying plaintiff's investment-backed expectations in their entirety.

Plaintiff further asserts there is no comprehensive land use plan or subdivision regulation for unincorporated portions of Johnson County requiring the five acre lot size, that there are no regulations providing for the improvement requirements, and that the county failed to identify any public health, safety or welfare concern that would have justified any of those requirements for plaintiff's subdivision. Plaintiff claims that other subdivisions have been approved without the five acre minimum lot size and improvement requirements that the county sought to impose upon him.

Plaintiff filed a claim for damages with the county commissioners based upon inverse condemnation, which was rejected. The county, by letter from defendant Rhodes, notified plaintiff that his claim was rejected and that his property would not be condemned or acquired through eminent domain proceedings. Plaintiff then asked for a detailed explanation and also requested that a variance in the lot size requirement be granted. He did not receive a reply, and because of that, now concludes that those requests have been denied by the county. Plaintiff thus asserts he has exhausted all available state administrative remedies. He claims damages in excess of $232,100.00. Plaintiff also has asserted various claims against individual commissioners (defendants Rhodes, Schuman, Key and Money) arguing that they were biased and prejudiced against plaintiff's proposed subdivision or that they had conflicting interests which compelled them to oppose the subdivision proposed by plaintiff.

The defendants have filed a number of motions, including a motion to stay discovery, as well as a motion for summary judgment on behalf of the Board of County Commissioners and the individual defendants (Rhodes, Schuman, Key and Money) asserting absolute and qualified immunity.

Motions considered at the hearing included Plaintiff's Motion to Compel Discovery, which was denied orally from the bench at the hearing, and Defendants' Motion to Stay Discovery, which was granted orally by the Court from the bench at the hearing.

Defendants cite and rely upon cases including the Tenth Circuit *Workman v. Jordan* case, holding that qualified immunity is a defense to liability and an entitlement to immunity from suit and other demands of litigation. *Workman v. Jordan,* 958 F.2d 332, 335 (10th Cir.1992). [Since the oral arguments in this case, the Tenth Circuit has rendered a subsequent opinion entitled *Workman v. Jordan,* 32 F.3d 475 (10th Cir. 1994), in which the appellate court reviewed the district court's denial of the qualified immunity motions to dismiss. The general principles governing resolution of qualified immunity issues are set forth in that opinion at 32 F.3d at 478–479.]

Defendants argue that discovery cannot be allowed until the Court resolves the threshold question of whether the law was clearly established at the time the allegedly unlawful action occurred. They also argue the Court must first determine whether the actions allegedly taken by the defendants are actions that a reasonable person could have believed were lawful at the time.

Arguments on the motions for summary judgment of the Board of County Commissioners and defendants Rhodes, Schuman, Key and Money were also considered at the hearing. The defendants rely heavily on this Court's opinion in *Miller v. Campbell County et al.,* 722 F.Supp. 687 (D.Wyo.1989), in which it is stated:

As officials performing discretionary functions, the defendants are entitled to assert qualified immunity from this lawsuit. *Harlow* [citation omitted]. Defendants are entitled to immunity from liability for civil damages under Section 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* The court's hold-

ing in *Harlow* focuses on the defendant's objective good faith, which "involves a presumptive knowledge in respect for 'basic, unquestioned constitutional rights.'" ... The plaintiff has the burden of establishing that the constitutional rights allegedly violated were clearly established....

722 F.Supp. at 696–97 (most citations omitted).

The defendants discuss the statutory framework for regulation of subdivision developments, as provided in Wyo.Stat. § 18-5–301 et seq., the enabling legislation allowing county commissioners to regulate subdivision development in a county, and setting out applicable criteria and powers. They note, as does plaintiff, that Johnson County has adopted and published the "Johnson County Subdivision Regulations," which are in the record now before the Court.

The defendants discuss in their brief the substantive deficiencies in the plaintiff's preliminary plat of the Diamond Cross Ranch Subdivision, and assert plaintiff was repeatedly advised of those deficiencies, both in writing and at public meetings. Their brief enumerates the reasons for disapproving plaintiff's proposed subdivision, and notes where the decision is supported in the applicable subdivision regulations.

Defendants rely upon a First Circuit case, arising in the context of land use litigation under Section 1983, *Raskiewicz v. Town of New Boston,* 754 F.2d 38 (1st Cir.1985). In that case, the federal court stated that litigants may not "ordinarily obtain federal court review of local zoning and planning disputes by means of 42 U.S.C. § 1983." 754 F.2d at 44. That court refused to allow "loose claims of conspiracy and corruption, charges of bias, bad faith and other 'opprobrious epithets of malice' to secure federal jurisdiction." *Id.,* quoting *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, at 830 (1st Cir.), *cert. denied,* 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982).

Defendants argue that plaintiff must demonstrate that the defendants violated clearly established statutory or constitutional rights of the plaintiff, and that the county subdivision regulations provided a rational basis for the defendants' actions concerning the plaintiff's proposed subdivision. The defendants also cite this Court's *Miller v. Campbell County,* 722 F.Supp. 687 (D.Wyo.1989), decision, in which the court dismissed a substantive due process claim and held that to prevail on such a claim, the plaintiff must show the action complained of is clearly arbitrary and unreasonable, and with no substantial relation to public health, safety, morals or general welfare.

Defendants argue there has been no taking without just compensation in this case, where the state provides an adequate procedure for seeking just compensation, citing *Williamson Planning Commission v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). Finally, they assert plaintiff has not shown a violation of his right to equal protection under the fourteenth amendment. The affidavits filed in support of the motion, defendants argue, demonstrate that plaintiff was treated no differently than any other person seeking subdivision authority and approval. In sum, defendants urge they are entitled to qualified immunity because plaintiff failed to clearly establish that the defendants' conduct in disapproving the subdivision as proposed violated any statutory or constitutional right of plaintiff.

Defendants also argue that the conduct of the defendants, with regard to the second prong of the qualified immunity defense (i.e., clearly established statutory or constitutional rights of which a reasonable official would have known), has not been demonstrated. As to the conflict of interest allegations, the affidavit of defendant Rhodes reflects that he recused himself from all decisions concerning the plaintiff's proposed subdivision. As to the allegations against defendants Schuman and Key, defendants urge that the allegations are "bare and insufficient" and are insufficient to withstand the motion for summary judgment on the defense of qualified immunity.

Defendants also argue that they are entitled to statutory immunity, pursuant to Wyo. Stat. § 1–23–107, which provides that members of any governmental board, agency, council, commission or governing body are not individually liable for any actions, inactions or omissions by the governmental

board, agency, council, commission or governing body.

Additionally, defendants argue that the board of county commissioners and the Johnson County Planning Commission members, and defendant Money in his role as Chairman of the Planning Commission, should also be granted absolute immunity as individuals based on their quasi-judicial roles, citing *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) and *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). They look to the Wyoming state law defining the powers of the Board of Commissioners to argue that the decisions regarding the subdivision proposal are quasi-judicial in nature, when the board is hearing contested cases under the Administrative Procedure Act.

Plaintiff opposes the defendants' motion for summary judgment. In his opposition, plaintiff sets out his version of the applicable facts. He agrees that *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), outlines the contours of the scope of review on the limited immunity issue. However, plaintiff asserts that the pleadings, dispositive facts, and the controlling law in this case, are distinguishable from those in *Miller v. Campbell Co.,* 722 F.Supp. 687 (D.Wyo. 1989), upon which the defendants have relied. Plaintiff cites *Park County v. Cooney,* 845 P.2d 346 (Wyo.1992), and *Abell v. Dewey,* 847 P.2d 36 (Wyo.1993), as authority which should be followed by this Court. He contends that these two cases require the application of a "functional approach" for determining the type of immunity upon which a defendant may rely and establish an objective standard for measuring a defendant's conduct in a qualified immunity case according to clearly established statutory or constitutional rights of which a reasonable person would have known.

Plaintiff argues that the individual defendants, while acting in their official capacities, were performing ministerial and administrative duties required by state law and applicable county regulations—matters over which they had no discretion. Accordingly, plaintiff argues they are not entitled to immunity. To the extent that any actions which violated plaintiff's established rights were exercised by defendants as a matter of discretion,

plaintiff argues that the defendants nevertheless took such actions in the form of rule making and policy decisions in an executive, as opposed to legislative or quasi-judicial capacity, and are therefore entitled to no more than qualified immunity considerations.

Plaintiff argues that the defendants did, in any event, violate clearly established rights, including the right to be free from arbitrary and capricious decisions of governmental officials which affect life and property. Plaintiff states there was no comprehensive land use plan in effect for Johnson County containing density criteria or restrictions and that the efforts of the Planning Commission and Board of County Commissioners to impose such restrictions on plaintiff were spurious and without precedent or foundation. Plaintiff also maintains that this Court must contend with a malicious intention component of the common law asserted against the defendants in their individual capacities. In this regard, plaintiff contends that the materials submitted by him are sufficient to overcome the defense of "good faith" and withstand summary judgment on this issue.

Finally, in its motion to dismiss for lack of jurisdiction, the Board of County Commissioners for Johnson County, Wyoming argues that this case is not ripe and that the Court lacks subject matter jurisdiction. The Board argues that because plaintiff has not employed or completed the inverse condemnation proceedings available in the state judicial system, this case is not ripe and should be dismissed for lack of jurisdiction, citing *Rocky Mountain Materials v. Bd. of Cty. Commissioners,* 972 F.2d 309 (10th Cir.1992) (§ 1983 action dismissed where plaintiff claimed county took property without just compensation and in violation of procedural due process by implementing zoning regulation enacted without requisite notice); *J.B. Ranch, Inc. v. Grand County,* 958 F.2d 306 (10th Cir.1992) (dismissing § 1983 action where plaintiff claimed county took property without just compensation and without due process by declaring roads on plaintiff's ranch public); and *Miller v. Campbell County,* 945 F.2d 348 (10th Cir.1991) (dismissing where plaintiffs claimed taking without just compensation and in violation of procedural

and substantive due process by declaring subdivision uninhabitable).

## Standard of Review—Motions to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)

■ The Tenth Circuit, in *Pitts v. Turner and Boisseau Chartered,* 850 F.2d 650, 652 (10th Cir.1988), *cert. denied* in 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989) (quoting *Shaw v. Valdez,* 819 F.2d 965, 968 (10th Cir.), set forth the standard of review for dismissals pursuant to Fed.R.Civ.P. 12(b)(6):

> In reviewing a dismissal for failure to state a claim, we must accept as true the plaintiff's well-pleaded factual allegations and all reasonable inferences must be indulged in favor of the plaintiff. Dismissal is appropriate only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' (Citations omitted.)

■ In considering a motion to dismiss, a court must take the allegations of the complaint at face value and must construe them most favorably to the plaintiff. The allegations in the plaintiff's complaint are presumed true. *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir.1991). A court should not grant a motion to dismiss unless it appears beyond doubt that the plaintiff could prove no set of facts supporting the claim which would entitle plaintiff to relief. *Huxall v. First State Bank,* 842 F.2d 249, 250–51 (10th Cir.1988). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz,* 948 F.2d at 1565.

However, Rule 12(b) further expressly provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

In this case, defendants have moved, pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss certain of the plaintiff's claims for failure to state claims upon which relief can be granted. Matters outside the pleadings have been presented to and not excluded by the Court. All parties have had reasonable opportunity to present all material made pertinent to the motions by Rule 56. Therefore, the motions to dismiss shall be treated as motions for summary judgment by the Court.

## Standard of Review Motions for Summary Judgment

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits on file, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The moving party's burden may be met by identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether these burdens have been met, the court is required to examine all evidence in the light most favorable to the non-moving party. *Barber v. General Electric Co.,* 648 F.2d 1272 (10th Cir.1981).

Once the moving party has met its initial burden, the burden shifts to the party resisting the motion. That party must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Manders v. Oklahoma ex rel. Dept. of Mental Health,* 875 F.2d 263, 265 (10th Cir.1989) citing *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554.

## Discussion

### 1. Section 1983 and Qualified Immunity

■ In order to establish a § 1983 violation, the plaintiff must prove (1) that "the conduct complained of was committed by a

person acting under color of state law" and (2) that the conduct deprived plaintiff "of rights, privileges or immunities secured by the Constitution or laws of the United States." *Martinez–Velez v. Simonet,* 919 F.2d 808, 810 (1st Cir.1990) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981); 42 U.S.C. § 1983). It is generally recognized that state law may endow an individual with a property interest. To have such a property interest, however, one "must have more than an abstract need or desire for it. [One] must have more than a unilateral expectation of it. [One] must, instead, have a legitimate claim of entitlement to it." *Martinez–Velez v. Simonet,* 919 F.2d at 810 (citing *Board of Regents of State Colleges, et al. v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)).

Once it is determined an individual does have a property interest, "[p]rocedural due process must accompany the deprivation of an established property or liberty interest. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). The range of protected interests is finite." *Elam v. Williams,* 753 F.Supp. 1530, 1535 (D.Kan.1990), *aff'd* 953 F.2d 1391 (10th Cir.1992). Quoting from *Unified School Dist. No. 457 v. Phifer,* 729 F.Supp. 1298 (D.Kan.1990), the Kansas district court stated:

Though protected by it, property interests are not creations of the Constitution; they emerge from and their scope is defined "by existing rules or understandings that stem from an independent source such as state law.…" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709). A property interest is more than an "abstract need or desire" and also more than a "unilateral expectation." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. "The hallmark of property, …, is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982); see also *Setliff v. Memorial Hosp. of Sheridan County,* 850 F.2d 1384, 1395 (10th Cir.1988). "It is a purpose of the

ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709.

*Elam v. Williams,* 753 F.Supp. 1530, 1535–36 (D.Kan.1990).

This Court has uncovered no authority that suggests a property owner has a vested property right in a contemplated development or subdivision. In fact, all authority that has been studied by this Court suggests no such broad and loosely-defined property right exists. *See e.g., MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 348–351, 106 S.Ct. 2561, 2566–2567, 91 L.Ed.2d 285 (1986); *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1013–19, 112 S.Ct. 2886, 2892–2895, 120 L.Ed.2d 798 (1992); *Snake River Venture v. Board of County Commissioners, Teton County, Wyoming,* 616 P.2d 744, 751 (Wyo.1980) ("This is, of course, simply a more specific statement of the general rule that a property owner has no vested right (which will withstand a later zoning regulation) in a development which is merely contemplated.").

Under the doctrine of qualified immunity, government officials generally are shielded from liability for civil damages under § 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Woodward v. City of Worland,* 977 F.2d 1392, 1396 (10th Cir. 1992); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Miller v. Campbell County, Wyoming,* 722 F.Supp. 687, 696–697 (D.Wyo. 1989).

The doctrine of qualified immunity provides generally that:

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Unlike other affirmative defenses, qualified immunity is not merely a

defense to liability; it is also an immunity from suit. Qualified immunity protects a defendant from discovery, trial, and the other burdens of litigation. For this reason, prior to filing an affirmative defense, a defendant can challenge a complaint by filing either a motion for summary judgment if the plaintiff has failed to come forward with facts or allegations that establish that the defendant has violated clearly established law.... Following a defendant's motion to dismiss, the district judge should permit the plaintiff to come forward with any additional allegations showing that the defendant violated clearly established law.... The court must then determine whether the complaint includes "all of the factual allegations necessary to sustain a conclusion that defendant violated clearly established law." ...

In addition to coming forward with the necessary factual allegations, the plaintiff must demonstrate that the right in question was clearly established at the time of the defendant's conduct.... The plaintiff cannot meet this burden merely by identifying a clearly established right and then alleging that the defendant has violated it. The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.... Unless and until the plaintiff both demonstrates a clearly established right and comes forward with the necessary factual allegations, the "government official is properly spared the burden and expense of proceeding any further[.]" ...

*Sawyer v. County of Creek*, 908 F.2d 663, 665–66 (10th Cir.1990) (citations omitted) *See also Rozek v. Topolnicki*, 865 F.2d 1154, 1157 (10th Cir.1989).

 *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), is the leading case on qualified immunity of government officials. The case concerned whether or not presidential aides were entitled to absolute immunity. The Supreme Court found that presidential aides generally are entitled only to qualified immunity. The Supreme Court stated:

Our decisions have recognized immunity defenses of two kinds. For officials whose special functions or constitutional status requires complete protection from suit, we have recognized the defense of "absolute immunity." The absolute immunity of legislators, in their legislative functions, ..., and of judges, in their judicial functions, ..., is now well settled. Our decisions also have extended absolute immunity to certain officials of the Executive Branch. These include prosecutors and similar officials, ..., executive officers engaged in adjudicative functions, ..., and the President of the United States[.] ...

For executive officials in general, however, our cases make plain that qualified immunity represents the norm. In *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), we acknowledged that high officials require greater protection than those with less complex discretionary responsibilities. Nonetheless, we held that a governor and his aides could receive the requisite protection from qualified or good-faith immunity.... In *Butz v. Economou* [438 U.S. 478, 98 S.Ct. 2894 57 L.Ed.2d 895 (1978) ], supra, we extended the approach of *Scheuer* to high federal officials of the Executive Branch. Discussing in detail the considerations that also had underlain our decision in *Scheuer*, we explained that the recognition of a qualified immunity defense for high executives reflected an attempt to balance competing values: not only the importance of a damages remedy to protect the rights of citizens, ... but also "the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." ... Without discounting the adverse consequences of denying high officials an absolute immunity from private lawsuits alleging constitutional violations— ... —we emphasized our expectation that insubstantial suits need not proceed to trial:

"Insubstantial lawsuits can be quickly terminated by federal courts, alert to the possibilities of artful pleading. Unless the complaint states a compensable claim for relief ..., it should not survive a motion to dismiss. Moreover, the Court recognized in *Scheuer* that damages suits concerning constitutional vio-

lations need not proceed to trial, but can be terminated on a properly supported motion for summary judgment based on the defense of immunity.... In responding to such a motion, plaintiffs may not play dog in the manger; and first application of the Federal Rules of Civil Procedure will ensure that federal officials are not harassed by frivolous lawsuits." ...

*Id.,* 457 U.S. at 807–08, 102 S.Ct. at 2732–33 (citations omitted). The defendant official must plead as an affirmative defense qualified or "good faith" immunity. *Id.,* 457 U.S. at 815, 102 S.Ct. at 2736. Generally, immunity will be available only to officials performing discretionary functions. *Id.,* 457 U.S. at 816, 102 S.Ct. at 2737.

By defining the limits of qualified immunity essentially in objective terms, we provide no license to lawless conduct. The public interest in deterrence of unlawful conduct and in compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an official's acts. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken "with independence and without fear of consequences." *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967).

*Id.,* 457 U.S. at 819, 102 S.Ct. at 2738–39.

The Supreme Court elaborated on the qualified immunity doctrine in *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Following a discussion of *Harlow* and the qualified immunity doctrine, the Supreme Court considered "whether qualified immunity is in fact an entitlement not to stand trial under circumstances." *Id.,* 472 U.S. at 525, 105 S.Ct. at 2815. The Court determined that qualified immunity doctrine, as discussed in *Harlow,* encompassed an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law. "The entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.,* 472 U.S. at 526, 105 S.Ct. at 2815 (emphasis in original).

The plaintiff bears the burden of establishing that the constitutional rights were clearly established. *Miller v. Campbell County, Wyoming,* 722 F.Supp. 687, 697 (D.Wyo.1989), citing *Pueblo Neighborhood Health Ctrs. v. Losavio,* 847 F.2d 642 (10th Cir.1988). The plaintiff may not, however, as this Court held in *Miller,* argue that a defendant will not be entitled to qualified immunity because the law is clearly established that a person cannot be deprived of property without due process of law. The rule of *Harlow* may not be applied at that level of generality. The plaintiff must:

do more than identify in the abstract a clearly established right of which he was allegedly deprived. Rather, he must show that the contours of the right "were sufficiently clear that a reasonable official would understand that what he is doing violates that right." ... In other words, the "question is whether a reasonable official could have believed his conduct lawful in light of clearly established law and the information the [official] possessed....

*Miller,* 722 F.Supp. at 697 [citations and page references from *Harlow* omitted]. In this case, plaintiff has not identified to the satisfaction of this Court the contours of the right he claims to have been violated. The assertions in his complaint have been made at an unacceptable level of generality.

The Tenth Circuit has continued to adhere to this analysis, as set forth recently in *Albright v. Rodriguez,* 51 F.3d 1531, 1535 (10th Cir.1995):

Although the very action in question does not have to have previously been held unlawful, "in the light of pre-existing law the unlawfulness must be apparent." *Id.* [citing *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) ]. "Ordinarily, in order for the law to be clearly established, there must be a

Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir. 1992).

If the plaintiff fails to carry either part of his two-part burden, the defendant is entitled to qualified immunity. *E.g., [Pueblo Neighborhood Health Ctrs. v.] Losavio,* 847 F.2d [642] at 646 [ (10th Cir. 1988) ]. Thus, a defendant is entitled to qualified immunity if the plaintiff fails to show a violation of a constitutional right at all. *See, e.g., Romero [v. Fay],* 45 F.3d [1472] at 1475 [ (10th Cir.1995) ] (defendant entitled to qualified immunity because plaintiff failed to allege facts and law demonstrating defendant arrested him without probable cause in violation of the Fourth Amendment); *Bella v. Chamberlain,* 24 F.3d 1251, 1255–56 (10th Cir.1994) (defendant entitled to qualified immunity because plaintiff failed to show defendant officer's act of shooting plaintiff's helicopter constituted a Fourth Amendment seizure), *cert. denied,* —— U.S. ——, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995). Further, a defendant is entitled to qualified immunity if the plaintiff fails to show that the law was clearly established. *See, e.g., Pallottino v. City of Rio Rancho,* 31 F.3d 1023, 1026 (10th Cir.1994) (defendant entitled to qualified immunity because plaintiff failed to show the law was clearly established under the Fifth Amendment that a witness may ignore police requests at the scene of an investigation for his name and address); *Medina,* 960 F.2d at 1498 (defendant entitled to qualified immunity because plaintiff failed to show the law was clearly established that "recklessness could give rise to liability under section 1983" and that a police officer could be liable under section 1983 for injuries caused by a fleeing suspect).

Only if the plaintiff succeeds in carrying his two-part burden, does the burden shift to the defendant. At that point, the defendant must show "that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Hinton [v. City of Elwood, Kansas ],* 997 F.2d [774] at 779 [ (10th Cir.1993) ]. If the court concludes Plaintiff has carried his burden, the court should state on the record clearly established constitutional right it finds the defendant violated. *See Losavio,* 847 F.2d at 646.

*Albright,* 51 F.3d at 1535.

 Plaintiff's allegations are general and broad. However, it appears that his complaint is intended to assert that he had an entitlement or right to obtain approval of his subdivision by the Board of County Commissioners, as originally proposed and without restriction. He argues that by imposing the five acre lot and improvement restrictions that the board has violated his due process rights. Assuming this is a fair characterization of the substance of plaintiff's claim, the claim is without substance. The Board of County Commissioners can act in a manner which is consistent with the governing statutes and rules and regulations concerning approval of subdivisions.

Plaintiff has also attempted to characterize his claim arising out of the failure to obtain approval of his proposed subdivision as a violation of the constitutional prohibition against the taking of property without just compensation. His taking argument will be addressed in subsequent portions of this order in more detail, but the Court also finds this claim to be without merit. Therefore, plaintiff cannot rely on such a right to satisfy the first prong of the qualified immunity analysis—whether the conduct of the defendant violated a clearly established constitutional right.

In Wyoming, the legislature has enacted a comprehensive statutory scheme that permits boards of county commissioners to provide for the physical development of unincorporated territory within the county. Wyo. Stat. §§ 18–5–101; 18–5–102. The board of county commissioners is empowered to appoint a county planning commission to "avail itself of the powers conferred by W.S. 18–5–101 through 18–5–107." The county planning commission:

> ... shall recommend the boundaries of various original districts and appropriate regulations to be enforced. The commission shall make a preliminary report and

hold public hearings thereon before submitting its final report, and the board of county commissioners shall not hold its public hearings or take action until it has received a final report of the commission. Wyo.Stat. § 18–5–103(b) (December 1977).

Wyo.Stat. § 18–5–105 provides, in part:

(a) The purpose of zoning is to conserve and promote the public health, safety and welfare of the citizens of the county. The board of county commissioners shall provide by resolution for the regulation of sanitary facilities for buildings, and other structures. Sanitary facilities means domestic water supplies, sewage disposal, rodent and insect control and the storage, collection and disposal of garbage and refuse.

(b) In order to accomplish the regulation of sanitary facilities the board of county commissioners shall divide the unincorporated territory of the county into zones as recommended by the county planning commission and shall regulate the erection, construction, reconstruction, alteration and uses of sanitary facilities to conform with the minimum requirements established by regulations of the public health authority having jurisdiction in each zone.

(c) . . .

The Wyoming statutory scheme further provides:

§ 18–5–201. Authority invested in board of county commissioners; inapplicability of chapter to incorporated cities and towns and mineral resources.

To promote the public health, safety, morals and general welfare of the county, each board of county commissioners may regulate and restrict the location and use of buildings and structures and the use, condition of use or occupancy of lands for residence, recreation, agriculture, industry, commerce, public use and other purposes in the unincorporated area of the county. . . .

Article 3 of Title 18 governs real estate subdivisions. Wyo.Stat. § 18–5–301 provides:

The regulation and control of the subdivision of land in the unincorporated areas in each county is vested in the board of county commissioners of the county in which the land is located. Nothing in this article shall contravene or limit the authority of any county to regulate and control the subdivision of land pursuant to the provisions of W.S. 18–5–201 through 18–5–207.

Wyo.Stat. § 18–5–304 provides:

No person shall subdivide land or commence the physical layout or construction of a subdivision without first obtaining a subdivision permit from the board of the county in which the land is located.

Wyo.Stat. § 18–5–305 empowers a board to adopt rules and regulations necessary to implement the provisions for and insure compliance with the intent and purposes of Title 18.

Wyo.Stat. § 18–5–306 sets forth the minimum requirements required by statute for subdivision permits. The board is to require certain information to be submitted with each application for a subdivision permit, including, but not limited to, "evidence satisfactory to the board that the proposed subdivision complies with any applicable zoning or land use regulations[.]" Wyo.Stat. § 18–5–306(a)(i).

Planning and zoning commissions are authorized to make recommendations to the board of county commissioners as to whether or not a subdivision application should be approved. Wyo.Stat. § 18–5–307. The board of county commissioners is responsible for final approval or disapproval of subdivision applications.

The scheme developed by the legislature also provides that the statutory requirements for subdivisions are minimums:

If any board has or enacts resolutions or regulations which impose requirements on subdividers or subdivisions which are more restrictive than the provisions of this article, the authority to enact such local resolutions or regulations being hereby granted, the local provisions are not superseded by the provisions of this article.

Wyo.Stat. § 18–5–315.

Johnson County Commissioners have enacted subdivision regulations pursuant to statutory authority. These regulations are in the record before the Court, and can be

found in Volume I, Deposition Exhibit 1. In Part I, the Subdivision Regulations state:

*PURPOSE OF RESOLUTION:* This resolution is designed and enacted for the purpose of promoting the public health, safety, morals and general welfare of the present and future residents of Johnson County, Wyoming by: encouraging the proper arrangements of streets and roads in relation to existing or planned streets and roads; providing adequate and convenient open spaces for traffic, utilities, access of fire fighting apparatus, civil defense, recreation, sites for educational facilities, light and air; avoiding population congestion and inadequate land planning, including minimum area and width of lots and tracts; and regulating such other matters as the Johnson County Planning and Zoning Commission and the Board of Johnson County Commissioners may deem necessary in order to protect the best interests of the public.

Section II of the regulations includes provisions regarding application and plat procedures, subdivision design standards, and various other matters. Part III is entitled "Plat Submission Procedures and Requirements." Part IV, Subdivision Design Standards, provides in part:

*Planning Considerations*

1) The Planning Commission shall study and review all subdivision plats in relation to the general character of the area, the general requirements of the community, and the particular requirements of the neighborhood.

2) Particular consideration will be given to topography in relation to the suitability of the land for development, flooding, storm drainage, and preservation of natural areas for open space.

3) Land subject to flooding shall be set aside for uses which will not aggravate the danger of flood hazard, will not be endangered by flooding, or will not endanger the general health, safety or welfare of the community.

4) Any subdivision plat submitted to the Planning Commission for approval shall be designed to permit continuation of streets into adjacent subdivision unless there is justification for an alternate design.

5) Land area for floodways, natural areas, schools, parks, open spaces, and future road rights-of-way shall be reserved and located according to good planning practices and principles.

6) Where an entire parcel is not subdivided, the subdivider must indicate his intended plans for disposition of the remainder of the parcel.

7) Multiple land uses within subdivision must be properly oriented and situated within the subdivision to provide the maximum convenience to the residents.

*General Standards*

1) The design and development of subdivisions shall preserve, insofar as it is possible, the natural terrain, natural drainage, existing topsoil, trees, wildlife and fish habitats.

2) Land subject to hazardous conditions such as land slides, rock falls, possible subsidence, shallow water table, open quarries, floods, and polluted or non-potable water supply shall be identified and shall not be subdivided until the hazards have been eliminated or will be eliminated by the subdivision and construction plans.

3) The subdivision improvement chart shall be used as a general guide for determining improvements required within a subdivision.

### SUBDIVISION IMPROVEMENT CHART

Density Group 1: Less than one lot per acre, one dwelling unit per acre or greater. Sewer (R); Water (R); Curb, gutter, and sidewalk (M); Walkways (M): Fire protection (R+); Street Lighting (M); Underground utilities (R); Street pavement (R).

Density Group 2: One to 2.5 acre lot size; Sewer (M); Water (M); Walkways (M); Underground utilities (M); Street pavement (M).

Density Group 3: Two ½ to 5 acres lot size: Walkways (M); Underground utilities (M); Street pavement (M).

Density Group 4: Five to 35 acre lot size: Discussed with subdivider.

M = Improvements may be required by Planning Commission or Board of County Commissioners where deemed necessary. R = Improvements shall be required, + = urban type fire protection (hydrants).

*Lots*

1) The lot size, width, depth, shape and orientation shall be appropriate for the location of the subdivision, for the type of development and use contemplated and for future resubdividing where appropriate.

2) Depth and width of properties shall be adequate to provide for the off-street service and parking facilities required by the type of use and development contemplated.

3) Corner lots for residential use shall have extra width to permit appropriate building setback from and orientation to both roads.

4) Double frontage and reverse frontage lots should be avoided except where it is essential to provide separation of residential development from expressways and major arterial streets or overcome specific disadvantages or topography and orientation.

5) The subdividing of the land shall be such as to provide each lot with satisfactory access to an approved public or private road.

6) Side lot lines shall be substantially at right angles or radial to road right-of-way lines or centerlines.

7) A single lot shall not be divided by a road, alley or other lot.

8) Wedge shaped lots. In the case of irregular or wedge shaped lots, no lot shall be less than thirty (30) feet in width at the front property line.

It is clear from a review of the voluminous record that the board of county commissioners and the planning commission considered plaintiff's subdivision application carefully and in accordance with the authority granted them by statute and county subdivision regulations. Following plaintiff's submission of his application for preliminary approval of his proposed subdivision in January of 1992, and following publication and notification to adjacent landowners, the plaintiff's proposal was considered on at least ten different occasions.[1]

The planning commission's March 11, 1992 letter to plaintiff provided:

The following is a list of the main concerns of the Planning Commission and the reason for not approving your application for the Diamond Cross Ranch Subdivision.

UTILITIES—must prove you have an agreement with all utility companies to comply with their requirements.

LOT SIZE—many concerns have been voiced about the smaller lots. Due to the research done on past neighborhood use, we are requesting the size be changed to 5 acre lots.

ACCESS ROADS—recommend there be no access to the County road other than from a main arterial road, taking into account recommendations from the Highway Dept. and the Road & Bridge supervisor.

IRRIGATION DITCHES—need to show an agreement with all the ditch owners or ditch companies allowing a subdivision to be placed over the ditches.

WATER RIGHTS—confirmation from the State Engineers office that there has been legal disposition of all water rights on the subdivision.

COVENANTS—include any limitations set by soil conservation reports and

---

1. February 13, 1992—Planning Commission meeting; February 18, 1992—County Commissioners meeting; March 3, 1992—County Commissioners meeting; March 5, 1992—Planning Commission denied preliminary approval of proposed subdivision [letter from Planning Commission to plaintiff dated March 11, 1992, Deposition Exhibit 13]; plaintiff's attorney's reply letter dated April 1, 1992, Deposition Exhibit 16; April 7, 1992—matter discussed by Board of County Commissioners and county attorney; May 6, 1992 letter from county attorney responding; August 5, 1992—plaintiff met with Planning Commission with his attorney and Bob Stuckert, plaintiff's engineer on the project, to reconsider lot size requirement; October 10, 1992—plaintiff's protest and hearing with Board of County Commissioners; November 5, 1992—Board of County Commissioners meeting discussing plaintiff's proposed subdivision; November 25, 1992—letter from County Commissioner Chairman Key to plaintiff's attorney notifying of decision not to reverse decision of Planning Commission, Deposition Exhibit 30.

highway department and road and bridge foreman.

Gary, if you wish to resubmit a revised plat, please be advised that it will once again be subject to preliminary plat process.

Deposition Exhibit 13.

All of the reasons asserted in support of the decision not to approve plaintiff's subdivision as proposed are provided for in the applicable regulations. The planning commission exercised appropriate discretion when it determined the five-acre lot size should be required. The regulations, and statutes, permit density to be one of the criteria which may be considered in conjunction with any subdivision application. The lot size also affects whether or not certain improvements, utilities and paved streets will be required. *See, e.g.,* Planning Considerations and Subdivision Improvement Chart, above. Plaintiff's original proposed subdivision included 11 lots, or 44% which were less than 2.5 acres, and had 23 lots of less than 5 acres. The regulations provide expressly that underground utilities and paved streets may be required for subdivisions with lots from 2.5 acres to 5 acres in size. This was not included in plaintiff's proposal for his subdivision.

The applicable county regulations also permit consideration of the placement of telephone lines, electric lines and other utilities, and place responsibility for compliance upon the subdivider. In this case, the Sheridan–Johnson County Rural Electric Association, after attending the February 13, 1992 public hearing, wrote the planning commission that plaintiff had not provided for electric services to lots in the proposed subdivision.

Wyoming statutes require that water rights be considered, and also permit safe access to be a consideration. Statutes and regulations also provide for review and recommendation of subdivision plans by affected ditch owners or companies. The planning commission requested plaintiff to disclose the existence of ditches or pipelines and submit evidence that the subdivision would not interfere with the exercise of existing water rights. The planning commission also requested that plaintiff revise his subdivision covenants to include provisions relating to the soil conservation district report required by Wyo.Stat. § 18–5–306(b), as well as road requirements.

None of the requirements and matters referenced by the planning commission in its initial refusal to approve plaintiff's proposed subdivision were beyond its statutory or regulatory authority. Plaintiff has not demonstrated to the satisfaction of this Court that either the planning commission or the board of county commissioners exceeded its authority in any manner when making the decision not to approve plaintiff's proposed subdivision. Plaintiff has not demonstrated that he submitted for consideration a subdivision proposal that should have met with the approval under applicable statutes and regulation. Rather, he challenges the planning commission's and board of county commissioner's judgment, urging that their collective concept of appropriate development in Johnson County has effected a taking. Plaintiff's taking arguments are addressed in the following portion of this order.[2]

Because plaintiff has failed to identify a clearly established statutory or constitutional right that has been violated the individual defendants in this action are entitled to qualified immunity. The defendants entitled to qualified immunity include all members of the Johnson County Planning Commission and all members of the Board of County Commissioners for Johnson County, Wyoming.

*2. Fifth Amendment Taking Issues*

■ Plaintiff has argued that the actions and conduct of the officials in this case acted to take his property rights, as a private landowner, without just compensation. He

---

2. The Court notes, by way of an aside, that plaintiff's arguments concerning conflicts of interest are not persuasive. The allegations against commissioner Rhodes are not substantiated in the record. The record clearly discloses that Rhodes recused himself from all decisions concerning plaintiff's proposed subdivision. The remainder of plaintiff's allegations concerning purported conflicts of interests are simply broad, conclusory allegations of ill will or malice and are without merit. Because these allegations are unsupported by the record, they are not dispositive and the Court need not consider them further.

argues this activity has violated the Fifth Amendment proscription against the taking of property without just compensation. He contends that their actions, in denying approval of the subdivision as proposed, have destroyed his investment-backed expectations in their entirety. Plaintiff does not complain of a physical taking or occupation of his property. Consequently, he must rely on that body of law that deals with "regulatory takings" of property.

There is a considerable body of law that has developed in recent years providing guidance and instruction in resolution of the issues now before this Court. Specifically, this law addresses plaintiff's contentions that the defendants' denial of approval of his subdivision, as proposed, has deprived him of the economically beneficial use of his own privately owned land. Leading Supreme Court cases in this area include *Dolan v. City of Tigard,* —— U.S. ——, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994); *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992); *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 837 n. 5, 107 S.Ct. 3141, 3149 n. 5, 97 L.Ed.2d 677 (1987); *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). These cases have provided the overarching rules and principles that are to guide all courts considering these issues today. Under the applicable principles:

... [Where a plaintiff does] not complain of a physical occupation, [a plaintiff] must rely on the claim that if a "regulation goes too far [then] it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415 [43 S.Ct. 158, 160, 67 L.Ed. 322] (1922). A regulation "goes too far" so as to effect a regulatory taking if (1) it deprives an individual of all economically beneficial use of his or her property; or (2) it does not substantially advance legitimate state interests. *Dolan* [—— U.S. at ——], 114 S.Ct. at 2316 (quoting *Agins v. City of Tiburon,* 447 U.S. 255, 260 [100 S.Ct. 2138, 2141, 65 L.Ed.2d 106] (1980)); *Lucas v. South Carolina Coastal Council* [505 U.S. 1003, 1016], 112 S.Ct. 2886, 2894 [120 L.Ed.2d 798] (1992) (same).

*Clajon Production Corp. v. Petera,* 70 F.3d 1566 (10th Cir.1995).

*Clajon Production Corp. v. Petera,* 70 F.3d 1566, is the most recent Tenth Circuit case discussing this type of taking analysis. That court stated the following concerning the "economically beneficial use" test:

If a regulation prohibits all "economically beneficial use," then that regulation categorically effects a taking in the same sense as a physical occupation. *Lucas* [505 U.S. at 1014–1016], 112 S.Ct. at 2894–94. Plaintiffs argue that the complete evisceration of a single stick in the bundle of property rights—i.e., the right to hunt on one's property—can constitute such a taking. The linchpin of this argument is Plaintiffs' contention that courts can and should analyze each stick in the bundle of property rights separately in order to determine whether the regulation at issue effects a taking of a given stick. *See Florida Rock Indus., Inc. v. United States,* 18 F.3d 1560, 1572 n. 32 (Fed.Cir.1994) (suggesting that the many variants of property rights should be analyzed separately for a regulatory taking just as is done for a physical taking), *cert. denied* [—— U.S. ——], 115 S.Ct. 898 [130 L.Ed.2d 783] (1995).... However, we believe that the relevant denominator must be derived from the entire bundle of rights associated with the parcel of land. *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 130–31 [98 S.Ct. 2646, 2662–63, 57 L.Ed.2d 631] (1978); *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 497 [107 S.Ct. 1232, 1248, 94 L.Ed.2d 472] (1987). Thus, we reject the *Florida Rock* approach and adhere to the more traditional analysis outlined in *Penn Central. See* 438 U.S. at 130 [98 S.Ct. at 2662] (Regulatory taking jurisprudence "does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated."); *see also Concrete Pipe & Prods. v. Construction Laborers Pension Trust* [508 U.S. 602, ——], 113 S.Ct. 2264, 2290 [124 L.Ed.2d 539] (1993) (same). [footnote omitted]

When viewed in the context of Plaintiffs' entire bundle of property rights (rather

than solely on their assumed right to hunt), Section 3 does not effect a destruction of all beneficial use of Plaintiffs' "parcel as a whole" because Plaintiffs still can "use their property for ranching, farming, and other livestock operations." *Clajon*, 854 F.Supp. at 851 n. 14. Therefore, we reject Plaintiffs' claim that Section 3 deprived them of all economically beneficially use of their property so as to effect an unconstitutional regulatory taking. [footnote omitted]

*Clajon Production Corp. v. Petera*, 70 F.3d at 1577.

Even if a court determines that the restrictions imposed on the use of land do not completely deprive a plaintiff of all economically beneficial use of property, such restrictions could still constitute a taking if "it failed substantially to advance a legitimate governmental interest." *Clajon Production Corp. v. Petera*, 70 F.3d at 1578, citing *Agins v. Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980). This is "an 'essentially ad hoc, factual inquir[y].' " *Id.*, citing *Kaiser–Aetna v. United States*, 444 U.S. 164, 175, 100 S.Ct. 383, 390, 62 L.Ed.2d 332 (1979). The "burden of striking down a generally applicable police power regulation on Takings Clause grounds 'properly rests on the party challenging the regulation to prove that it constitutes an arbitrary regulation of property rights.' *Dolan*, [— U.S. at — n. 8], 114 S.Ct. at 2320 n. 8

(citing *Euclid v. Ambler Realty Co.*, 272 U.S. 365 [47 S.Ct. 114, 71 L.Ed. 303] (1926)." *Id.*

After determining that the Supreme Court's taking jurisprudence does not require the "essential nexus" and "rough proportionality" tests to apply to all regulatory takings claims,[3] the Tenth Circuit continued by stating:

While a property owner does not and should not expect to be forced to dedicate land unrelated to, or disproportionately related to, the burden that he or she imposes on the public, it is well established that a "property owner necessarily expects the uses of his property to be restricted, from time to time, by various measures newly enacted by the State in legitimate exercise of its police powers." *Lucas* [505 U.S. at 1027], 112 S.Ct. at 2899. That is, the Takings Clause allows some property owners to be more burdened by a challenged governmental regulation than others because "[w]hile each of us is burdened somewhat by restrictions, we, in turn, benefit greatly from the restrictions that we place on others." *Keystone*, 480 U.S. at 491 [107 S.Ct. at 1245]. [footnote omitted] *See also Dolan* [— U.S. at —], 114 S.Ct. at 2316 (acknowledging that "[g]overnment hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law' ") (quoting *Mahon*, 260 U.S. at 413, 43 S.Ct. at 159).

---

3. The Tenth Circuit stated:
 While the Supreme Court has applied *Kaiser–Aetna*'s "ad hoc" inquiry to Takings Clause challenges to broad regulatory schemes, two recent cases applying this test in the specific context of development exactions, [footnote omitted] *Nollan v. California Coastal Comm'n* and *Dolan v. City of Tigard*, have explained further that any required dedication of property must have an "essential nexus" and be "roughly proportional" to the burdens imposed on the public by the property owner.... Thus, before conducting the governmental interest inquiry, we first must determine whether the "essential nexus" and "rough proportionality" tests apply to all regulatory takings claims. Based on a close reading of *Nollan* and *Dolan*, we conclude that those cases (and the tests outlined therein) are limited to the context of development exactions where there is a physical taking or its equivalent....
 In our judgment, both *Nollan* and *Dolan* follow from takings jurisprudence's traditional

concern that an individual cannot be forced to dedicate his or her land to a public use without just compensation. That is, *Nollan* and *Dolan* essentially view the conditioning of a permit based on the transfer of a property interest— i.e., an easement—as tantamount to a physical occupation of one's land.... Thus, we believe that *Nollan* and *Dolan* are best understood as extending the analysis of complete physical occupation cases to those situations in which the government achieves the same end (i.e., the possession of one's physical property) through a conditional permitting procedure.... Given the important distinctions between general police power regulations and development exactions, and the resemblance of development exactions to physical takings cases, we believe that the "essential nexus" and "rough proportionality" tests are properly limited to the context of development exactions....

*Clajon Production Corp.*, 70 F.3d at 1578 (citations omitted).

*Clajon Production Corp. v. Petera*, 70 F.3d at 1579.

Wyoming has, by statute, stated what interests are intended to be promoted with the enactment of the legislation permitting boards of county commissioners to regulate the use and development of unincorporated land within a county. Wyo.Stat. § 18–5–105, for example, provides that "[t]he purpose of zoning is to conserve and promote the public health, safety, and welfare of the citizens of the county." Wyo.Stat. § 18–5–201 likewise permits boards of county commissioners to regulate "to promote the public health, safety, morals and general welfare of the county[.]" These are legitimate interests that serve a public purpose and promote the public welfare.

■■■ This Court finds that the scheme providing for development of subdivisions within a county in the State of Wyoming, while it may adversely affect the interests of an owner of private property, does not constitute a regulatory taking, as discussed and set forth in the Tenth Circuit's *Clajon Production Corp. v. Petera* analysis. The Court also notes that plaintiff's own statements do not lead logically to the conclusion that his investment backed expectations have been destroyed in their entirety. Although the lot restrictions may have diminished the number of lots available for sale in the proposed subdivision from 23 to perhaps as few as seven, this fails to demonstrate a complete destruction of plaintiff's investment backed expectations.

■■■ Finally, plaintiff has argued that the defendants' actions in this case violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. This argument is premised on the notion that the protection of private property is a fundamental right that should be subject to strict scrutiny. As discussed in *Clajon Production Corp. v. Petera*, that contention is erroneous in this particular context.

Economic regulations—i.e., those burdening one's property rights—have traditionally been afforded only rational relation scrutiny under the Equal Protection Clause....

We must (1) strongly presume that Wyoming's regulatory scheme is constitutional, ..., and (2) uphold [the regulation] unless it "rests on grounds wholly irrelevant to the achievement of the State's objective[.]" ... Moreover, the state need not articulate its actual objective behind the scheme or submit evidence to support the rationality of the regulation, provided that we can conceive of facts which reasonably justify the classification at issue.... Under this deferential standard of review—which is a "paradigm of judicial restraint," ...—we have no difficulty in upholding the judgment of the district court.

*Clajon Production Corp. v. Petera*, 70 F.3d at 1580 (citations omitted).

Here, plaintiff has argued that there are other subdivisions in the area near his proposed subdivisions that did not have similar five acre lot and improvement restrictions imposed upon them. While factually that may be so, plaintiff has not shown any reason that the distinctions between subdivisions are not legitimate or that they are not rationally related to achievement of the State's express, stated objectives relative to the development of property. The materials before the Court indicate that the state officials considered the effect that the development of the number of lots as proposed could have had on groundwater aquifers, as well as concerns about the numbers of water wells and septic systems within the confines of the proposed subdivision. While plaintiff may not agree with the state officials' assessment of the situation, it is not necessary that this Court find the Equal Protection Clause has been violated because plaintiff has demonstrated disagreement with those judgments and the means employed to achieve the state's legitimate objectives. It is only necessary that the court be able to conceive of facts that justify the classification at issue. Under this very deferential standard of review, this Court must find that the state's efforts to balance its policies concerning subdivision development with those of plaintiff as a subdivision developer are "more than sufficient to withstand rational basis scrutiny." *Clajon Production Corp. v. Petera*, 70 F.3d at 1581.

### Conclusion

None of plaintiff's allegations demonstrate that there is a clearly established constitu-

tional or statutory right of plaintiff's which has been violated by defendants. Nothing in the voluminous record before this Court suggests that the planning commission or board of county commissioners in this case would have or should have understood that what they were doing in conjunction with the plaintiff's subdivision application would have violated any clearly established right on the part of plaintiff. Quite to the contrary, it is most likely these defendants believed they were doing precisely what they were required to do in their capacities as county commissioners or planning commission members charged with implementing the Wyoming statutory scheme governing development of subdivisions in the unincorporated territories of a county. Unless and until the plaintiff both demonstrates a clearly established right and comes forward with the necessary factual allegations, these government officials are properly spared the burden and expense of proceeding any further. Plaintiff has no entitlement or protectable property interest which might abrogate the qualified immunity defense until such time as an application for a proposed subdivision has been finally approved and has been determined to be in compliance with applicable state law.

The individual defendants in this case are government officials performing discretionary functions. The requirement that an applicant for subdivision approval meet certain requirements is rationally related to the State's interest in promoting the public health, safety, morals and general welfare of its citizens by permitting the regulation of the use and development of land within the state of Wyoming.

The individual Board members, while performing the discretionary functions delegated to the planning commission and board of county commissioners, are entitled to qualified immunity, for the reason that plaintiff has not shown a violation of clearly established law. Indeed, the public interest may be better served by ensuring that Board and Planning commission members are able to fulfill their public service functions with independence and without fear of consequences, and that they are free to perform the duties required of them by law.

Because it is not entirely clear from the pleadings in this matter whether the county itself is a defendant, the Court feels it is appropriate to address this issue briefly. The county itself should be dismissed as a defendant from this suit, as this is not a case where the county is a a person subject to suit under the federal civil rights statute, 42 U.S.C. § 1983. *Will v. Michigan,* 491 U.S. 58, 70–71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). Accordingly, Johnson County will be dismissed as a defendant from this suit.

It appears to this Court that there are no genuine issues of material fact and that all defendants are entitled to judgment as a matter of law for the reason that they are qualifiedly immune from suit. Because this Court's ruling is dispositive, the Court need not consider the remainder of the arguments advanced by the parties that have not been addressed previously in this opinion. Accordingly, and for the foregoing reasons, it is hereby

**ORDERED** that summary judgment shall be, and is, **GRANTED** in favor of each individual defendant, including R. Tracy Rhodes, Neal Schuman, Richard Tass, Jimmie C. Key, and Kerry C. Money, individually and in their official capacities as members of the Johnson County Planning Commission and the Board of County Commissioners for Johnson County, Wyoming, for the reason that defendants are qualifiedly immune from suit. It is further

**ORDERED** that the Board of County Commissioners, Johnson County, State of Wyoming, shall be, and is, **DISMISSED** as a defendant. It is further

**ORDERED** that plaintiff's motion to compel discovery, which was denied orally from the bench at the hearing, shall be, and is, **DENIED.** It is further

**ORDERED** that defendants' Motion to Stay Discovery, which was granted orally from the bench at the hearing, shall be, and is, **GRANTED.**

JUDGMENT SHALL BE ENTERED ACCORDINGLY.

### JUDGMENT

This action came before the Court upon the parties' cross motions for summary judgment. The Court found that there is no

genuine issue as to any material fact and that defendants are entitled to judgment as a matter of law, as set forth more fully in the Court's Order on Dispositive Motions. It is therefore

ORDERED, ADJUDGED AND DE-CREED that the plaintiff, Gary Marshall, recover nothing of defendants, The Board of County Commissioners for Johnson County, Wyoming, R. Tracy Rhodes, Neal Schuman, Richard Tass, Jimmie C. Key, and Kerry C. Money, individually and in their official capacities, and that judgment be entered in favor of defendants, The Board of County Commissioners for Johnson County, Wyoming, R. Tracy Rhodes, Neal Schuman, Richard Tass, Jimmie C. Key, and Kerry C. Money, individually and in their official capacities.